IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ADVANCED OPTICAL TRACKING, LLC, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civ. Action No. 12-1292-LPS-CJB |
| KONINKLIJKE PHILIPS N.V. and PHILIPS ELECTRONICS NORTH AMERICA CORP., | ) ) ) ) ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Presently pending before the Court is Defendants Koninklijke Philips N.V.'s ("Philips NV") and Philips Electronics North America Corp.'s ("Philips America") (collectively, "Philips") motion to dismiss Advanced Optical Tracking, LLC's ("AOT") induced infringement claims, pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.I. 13)

For the reasons that follow, I recommend that Philips' Motion to Dismiss be DENIED.

### I.   BACKGROUND

#### A.   The Parties

AOT is a Delaware limited liability company with a place of business in Wilmington, Delaware. (D.I. 10 at ¶ 2) Philips NV is a corporation organized under the laws of the Netherlands, with a principal place of business in Amsterdam, Netherlands. (*Id.* at ¶ 3) Philips America, a wholly owned subsidiary of Philips NV, is a Delaware corporation with a principal place of business in Andover, Massachusetts. (*Id.* at ¶ 4)

### B. Procedural Background

On October 5, 2012, AOT commenced this action, asserting that Royal Philips Electronics N.V. and Philips America each directly and indirectly infringe certain claims of its patent, U.S. Patent No. 6,990,058 ("the '058 patent"). (D.I. 1 at ¶¶ 11-22) On December 4, 2012, counsel for Philips NV advised AOT that the Dutch parent of Philips America should be named "Koninklijke Philips Electronics N.V." rather than "Royal Philips Electronics N.V." (D.I. 15 at 2) AOT thereafter filed a First Amended Complaint ("FAC") on December 11, 2012; the content of the FAC was identical to the original Complaint, with the exception that the correct name for Philips NV was substituted in the caption.[1] (D.I. 10; D.I. 15 at 2)

In lieu of filing an Answer, on January 28, 2012, Philips filed a motion to dismiss AOT's induced infringement claims, pursuant to Rule 12(b)(6). (D.I. 13) Briefing on this motion was complete on February 25, 2013. (D.I. 17) On July 11, 2013, this matter was referred to me by Judge Leonard P. Stark to hear and resolve all pretrial matters, up to and including the resolution of case-dispositive motions. (D.I. 21)

## II. LEGAL STANDARDS

The sufficiency of pleadings for non-fraud cases is governed by Federal Rule of Civil Procedure 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When presented with a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court conducts a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the court separates the factual and legal

---

[1] After briefing for this motion was complete, Philips NV filed a Notice of Name Change, indicating it was changing its corporate name from "Koninklijke Philips Electronics N.V." to "Koninklijke Philips N.V." (D.I. 20)

2

elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Id.* at 210–11. Second, the court determines "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Thus, although a non-fraud claim need not be pled with particularity or specificity, that claim must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted).

Determining whether a claim is plausible is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A plausible claim does more than merely allege entitlement to relief; it must also demonstrate the basis for that "entitlement with its facts." *Fowler*, 578 F.3d at 211 (citations omitted). Thus, a claimant's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted); *accord Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). In other words, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In assessing the plausibility of a claim, the court must "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler*, 578 F.3d at 210 (citing *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).

3

## III. DISCUSSION

As noted above, it is Plaintiff's allegations of induced infringement that are at issue in the instant motion. Pursuant to 35 U.S.C. § 271(b), "[w]hoever actively induces infringement of a patent shall be liable as an infringer." In order to prove induced infringement, the patentee "must show direct infringement, and that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1363 (Fed. Cir. 2012) (internal quotation marks and citation omitted). At the pleading stage, in order to survive a motion to dismiss such a claim, a patentee must plead facts "plausibly showing that [the alleged infringer] specifically intended [a third party] to infringe the patents-in-suit and knew that the [third party's] acts constituted infringement." *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012).

Philips challenges the sufficiency of AOT's induced infringement allegations on the grounds that the Complaint: (1) fails to adequately plead that either Defendant had pre-filing knowledge of the '058 patent or knowledge of its alleged inducement; and (2) does not allege sufficient facts to satisfy the intent requirement of an induced infringement claim. (D.I. 14 at 5-7) The Court will address these issues in turn.

### A. Pre-Filing Knowledge

With regard to pleading pre-suit knowledge of an induced infringement claim, a plaintiff must allege facts plausibly showing that Defendants knew that the direct infringers' actions constituted infringement. *See Pragmatus AV, LLC v. Yahoo! Inc.*, C.A. No. 11-902-LPS-CJB, 2013 WL 2295344, at *1 (D. Del. May 24, 2013) (citing *In re Bill of Lading*, 681 F.3d at 1339). The relevant allegations in the FAC regarding the induced infringement claims are:

> 11. ... The '058 Accused Products include, without limitation, Blu-Ray Recordable (BD-R) and Blu-Ray Rewritable (BD-RE) discs, including but not limited to Philips-branded BD-R discs and BD-RE discs.
>
> 12. AOT provided actual notice to Philips of its infringement of the '058 Patent in a letter sent by certified mail on September 19, 2012.
>
> 13. Philips has had actual knowledge of the '058 Patent and its infringement of that patent since at least the date that Philips received the September 19, 2012 letter.
>
> 14. Upon information and belief, Philips has induced and continues to induce others to infringe at least claim 1 of the '058 Patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including, but not limited to, Philips's suppliers, distributors, and resellers of '058 Accused Products whose making, using, selling and offering for sale in the United States, and importing into the United States the '058 Accused Products constitutes direct infringement of at least claim 1 of the '058 Patent. In particular, Philips's actions that aid and abet others to infringe include entering into, performing, and requiring performance under manufacturing, supply, and distribution agreements for the '058 Accused Products. On information and belief, Philips has engaged in such actions with specific intent to cause infringement or with willful blindness to the resulting infringement because Philips has had actual knowledge of the '058 Patent and that its acts were inducing others to infringe the '058 Patent since at least the date it received the notice letter from AOT notifying Philips that the '058 Accused Products infringed the '058 Patent.

(D.I. 10 at ¶¶ 11-14)[2]

---

[2] Only the allegations as to Philips NV are listed here, by way of example, as the allegations of induced infringement against Philips America are, in essence, identical to those made against Phillips NV. (D.I. 10 at ¶¶ 11-14, 17-20)

5

Contrary to Philips' contentions, AOT's allegations of pre-suit knowledge are accompanied by basic factual content meant to bolster the claim. Here, the FAC identifies September 19, 2012 notice letters that are asserted to have provided Defendants with knowledge of the inducement claims, and explains how that notification was allegedly sent to Defendants. (D.I. 10 at ¶¶ 12-13) Additionally, AOT's allegations indicate that these letters not only identified the patent-in-suit and the induced infringement claim, but that they also identified the accused products at issue, the alleged direct infringers (Defendants' suppliers, distributors, and resellers),[3] how the alleged direct infringers were alleged to have infringed the patent (i.e., through the manufacture, use, sale and offer for sale of the accused products) and certain exemplary actions by which Defendants were asserted to have acted to induce infringement (i.e., by "entering into, performing, and requiring performance under manufacturing, supply, and distribution agreements" with those suppliers, distributors, and resellers). (*Id.* at ¶ 14)

These allegations, while basic, are not of a kind with those in cases where the plaintiff made only the bald assertion of defendant's pre-suit knowledge, but failed to bolster that claim with any real factual support.[4] Instead, construing all facts in a light most favorable to AOT, it

---

[3] As AOT notes, (D.I. 15 at 7), it is not required to identify a specific direct infringer if it pleads facts, as it has here, sufficient to allow an inference that at least one direct infringer exists. *In re Bill of Lading*, 681 F.3d at 1336.

[4] *See, e.g., Pragmatus AV, LLC*, 2013 WL 2295344, at *1 (finding knowledge of induced infringement claim insufficiently alleged where, other than identifying a group of users alleged to be direct infringers who were alleged to have received unspecified "'written notice'" of infringement, plaintiff pled "no facts" regarding the content of that notice that might have suggested that defendant knew that the users infringed the patents or how they did so); *HMS Portfolio LLC v. Fujitsu Ltd.*, Civil Action No. 11-770-RGA, 2012 WL 2580547, at *1 (D. Del. Jul. 3, 2012) (finding allegation of pre-suit knowledge of induced infringement insufficient, where plaintiff included no factual support for allegation that defendant "'was formally placed on notice of its infringement'" as of a certain date, including no allegation that defendant knew of

has sufficiently alleged that it provided enough information in these notice letters for Defendants to gain knowledge of the patent-at-issue and of the contours of its induced infringement claims. *See Pagemelding, Inc. v. ESPN, Inc.*, No. C 11-06263 WHA, 2012 WL 2285201, at *2 (N.D. Cal. June 18, 2012) (finding allegation of knowledge sufficient, for purposes of an induced infringement claim, based upon content of a pre-suit letter sent to defendant stating "[defendant] was utilizing the technology disclosed in the [patent-in-suit] on [defendant's] websites [that were alleged to be infringing]. . . ."); *cf. Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1332 (Fed. Cir. 2010) (deeming plaintiff's showing as to knowledge of induced infringement sufficient to withstand summary judgment, where patentee's letter to the alleged infringer identified the patent-in-suit and stated that all products from a certain product category infringed the patent).

**B.     Specific Intent**

With regard to AOT's allegations regarding specific intent, the United States Court of Appeals for the Federal Circuit has stated that:

> [T]he specific intent necessary to induce infringement 'requires more than just intent to cause the acts that produce direct infringement. . . . [T]he inducer must have an affirmative intent to cause direct infringement.' [ ] Thus, 'inducement requires evidence of culpable conduct, *directed to encouraging* another's infringement, not merely that the inducer had knowledge of the direct infringer's activities.'

*Symantec Corp. v. Computer Assocs. Int'l, Inc.*, 522 F.3d 1279, 1292-93 (Fed. Cir. 2008) (emphasis added) (citation omitted). Our Court has further explained that, at the pleading stage, a plaintiff has not sufficiently alleged specific intent where its complaint contains a "dearth of factual allegations regarding defendants' [intent,]" such that it references no "acts by the

---

the existence of the patent-in-suit, nor any allegation as to how notice was conveyed).

7

defendants beyond a formulaic recitation" of the elements of an induced infringement claim. *Telecomm Innovations, LLC v. Ricoh Co., Ltd.*, Civ. No. 12-1277-SLR, 2013 WL 4017096, at *4 (D. Del. Aug. 6, 2013) (citing *E.I. Du Pont de Nemours & Co. v. Heraeus Holding GmbH*, Civ. Action No. 11-773-SLR-CJB, 2012 WL 4511258, at *6-7 (D. Del. Sept. 28, 2012)).[5] On the other hand, this Court has found intent to be sufficiently pled in circumstances where plaintiff: (1) provided the defendant with written notice that certain accused products infringed the patent-in-suit; (2) identified the general group of direct infringers who were asserted to have infringed the patent; and (3) set out facts explaining how the defendant was alleged thereafter to have interacted with those direct infringers in a way that would prompt the reasonable inference that defendant encouraged the direct infringer to continue to infringe the patent.[6]

Here, again construing the FAC in the light most favorable to it, AOT's allegations, while not robust, are sufficient to meet the law's requirements. Contrary to Defendants' claim, the

---

[5] *See also Pragmatus AV, LLC*, 2013 WL 2295344, at *1 (finding allegations regarding specific intent insufficient where there was no "factual basis from which to draw an inference of intent[,]" as the complaint did not "even use the word 'intent'" and provided no "allegations as to the relationship between [defendant] and its users of the accused . . . product").

[6] *Telecomm Innovations*, 2013 WL 4017096, at *4 (finding intent sufficiently pled where defendants were alleged to have, after being provided with notice of alleged infringement, induced their customers to infringe the patent-in-suit by "making, using, importing, selling and/or offering for sale the [accused fax-capable products] for use by customers and others and also providing those customers and others with technical support and services [and] detailed explanations, instructions and information as to arrangements, applications and uses" of the accused products that "promote and demonstrate how to use" the accused products "in a manner that would infringe [the patent-in-suit]"); *Netgear, Inc. v. Ruckus Wireless, Inc.*, 852 F. Supp. 2d 470, 475-76 (D. Del. 2012) (holding, regarding an inducement claim that alleged pre-filing knowledge of the patent, that plaintiff's allegations as to specific intent were sufficient, where plaintiff alleged facts suggesting that defendant was involved in the marketing and distribution of its products that are used by customers to infringe, and that defendant's customers employed one of defendant's employees to manage the infrastructure and use of defendant's products).

8

FAC does contain more than "bare assertions" as to specific intent. (D.I. 14 at 6) Instead, the FAC contends that Defendants, with knowledge that the accused products infringed the patent-in-suit, continued to require performance of contractual agreements entered into with their suppliers, distributors and resellers—agreements mandating that those entities manufacture, supply and distribute the accused products. (D.I. 10 at ¶ 14)

Defendants take issue with the fact that the FAC does not set out additional facts as to the content of those agreements, or as to the nature of the relationship between Defendants and these third parties—and suggest that "it is reasonable that the accused [products]" might have "found their way into the United States" via means other than through the efforts of these listed third parties. (D.I. 14 at 6) Yet the FAC need not rule out all possible non-infringing eventualities; it need simply assert enough facts to provide Defendants with fair notice of facially plausible claims. And here, the allegations as to the nature of the contractual relationship between Defendants and the direct infringers—by which Defendants are alleged to, in essence, intentionally require these third parties to infringe or face the risk of violating certain contracts—are concrete and of the kind that could plausibly satisfy the element of specific intent. *See, e.g., Intellectual Ventures I LLC v. Nikon Corp.*, Civil Action No. 11-1025-SLR, 2013 WL 1298599, at *6 (D. Del. Apr. 1, 2013) (finding intent sufficiently pled where defendants were alleged to have "contract[ed] with others to market and sell infringing products with the knowledge and intent to facilitate infringing sales") (internal quotation marks and citation omitted); *Patent Harbor, LLC v. DreamWorks Animation SKG, Inc.*, Civil Action No. 6:11-cv-229, 2012 U.S. Dist. LEXIS 114199, at *18-19 (E.D. Tex. July 27, 2012) (finding intent sufficiently pled where defendants were alleged to induce others to infringe by "directing and

controlling them through contract").

## IV. CONCLUSION

For the foregoing reasons, the Court recommends that the Motion to Dismiss be DENIED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the Court's Standing Order In Non-Pro Se Matters For Objections Filed Under Fed. R. Civ. P. 72, dated November 16, 2009, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Dated: September 9, 2013

                                                                                  Christopher J. Burke
                                                                                  UNITED STATES MAGISTRATE JUDGE